1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7

8
9
10
11

TAMI W.,

Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No. 2:21-cv-252-DWC

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

12
13

        Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's

14

denial of plaintiff's applications for supplemental security income ("SSI") and disability

15

insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73,

16

and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned

17

Magistrate Judge. *See* Dkt. 5. Plaintiff has filed an opening brief, ("Open") to which defendant

18

filed a responsive brief ("Response"). *See* Dkts. 15, 20. This matter is fully briefed, without the

19

optional reply.

20

        The doctors in the record express widely varying opinions regarding plaintiff's work-

21

related limitations. When reviewing this long medical record, the ALJ herein provided a detailed

22

and thorough summary of the medical evidence and of the findings relevant to plaintiff's

23

disability claims. Because substantial evidence supports the ALJ's findings, which provide

24
25

1    specific and legitimate rationale for the failure to credit fully the medical opinions from

2    plaintiff's doctors, and for the other reasons discussed herein, this matter is affirmed.

3                            FACTUAL AND PROCEDURAL HISTORY

4           On January 31, 2014, plaintiff filed an application for DIB and SSI, alleging disability as

5    of December 31, 2009. *See* Dkts. 8-10, Administrative Record ("AR"), p. 24; *see also* Dkt. 8,

6    AR, pp. 1-1825; Dkt. 9, AR, pp. 1826-3037; Dkt. 10, AR, pp. 3038-4570. The application was

7    denied on initial administrative review and on reconsideration. *See* AR 24. A hearing was held

8    before Administrative Law Judge ("ALJ") Eric Basse on January 27, 2017, after two

9    postponements. *See id*. In a decision dated July 13, 2017, ALJ Eric Basse determined plaintiff to

10   be not disabled, a decision appealed by plaintiff and reversed by the undersigned in the U.S.

11   District Court for the Western District of Washington. *See* AR 14-35, 1635-45.

12          On July 21, 2020, plaintiff received another Administrative hearing before ALJ C.

13   Howard Prinsloo ("the ALJ"), who issued a written decision denying plaintiff's claims on

14   October 28, 2020. *See* AR 1547-65. The ALJ's October 28, 2020 written decision is the final

15   decision of the Commissioner of Social Security ("Commissioner"). *See* AR 1-7; 20 C.F.R. §

16   404.981, § 416.1481.

17          In plaintiff's Opening Brief, plaintiff maintains the ALJ erred by: (1) failing to consider

18   properly the opinions of the treating and examining providers and provide adequate explanation

19   for not according those opinions greater weight; and (2) concluding without substantial evidence

20   in support plaintiff had the residual functional capacity ("RFC") to perform light work even

21   limited to simple, routine tasks, and limited contact with the public, coworkers, and supervisors.

22   "Open," Dkt. 15, p. 1. Defendant contends the ALJ reasonably evaluated the contradictory

23   opinion evidence and the RFC is supported by substantial evidence. "Response," Dkt. 20, p. 1.

24

25

1

<u>STANDARD OF REVIEW</u>

2      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

3  Social Security benefits if the ALJ's findings are based on legal error or not supported by

4  substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir.

5  2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as

6  adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal

7  citations omitted).

8                                                    <u>DISCUSSION</u>

9  **I.       The ALJ did not err when evaluating the medical evidence.**

10     Plaintiff contends the ALJ erred when evaluating the medical evidence, such as the

11  medical opinion evidence provided by consultative psychiatric examiner, Dr Rahul Khurana

12  MD; examining psychologist, Dr. David Widlan PhD; non-examining psychologist, Dr. Faulder

13  Colby, PhD (AR 1017-20); and, treating physician, Dr. Frederica Overstreet, MD. Open, Dkt. 15,

14  3-16. Defendant contends the ALJ reasonably evaluated the contradictory opinion evidence.

15  Response, Dkt. 20, pp. 1-11.

16     Because plaintiff filed her applications prior to March 27, 2017, the ALJ must provide

17  "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or

18  examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing

19  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th

20  Cir. 1990)). However, when an opinion from an examining or treating doctor is contradicted by

21  other medical opinions, the treating or examining doctor's opinion can be rejected "for specific

22  and legitimate reasons that are supported by substantial evidence in the record." *Lester*, Isupra,

23  81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v.*

24

25

1    *Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a

2    detailed and thorough summary of the facts and conflicting clinical evidence, stating his

3    interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

4    1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). That is what the ALJ did

5    here.

6          The Court notes defendant's summary of the medical evidence, demonstrating its highly

7    contradictory nature:

8

9          *Gary Nelson, Ph.D.* (*non-examining* [*psychological doctor*]): [Plaintiff is limited to:]
          simple, routine tasks; familiar, routine complex tasks; can maintain concentration,
          persistence, and pace with normal breaks; superficial contact with public; fewer co-

10         workers; slow-paced workplace changes (internal citation to AR 150-52).
          • *John Robinson, Ph.D.* (*non-examining* [*psychological doctor*])*:* reduced ability to

11         concentrate for extended periods of time impacts more detailed tasks (e.g., no
          detailed work); "may" have reduced routine attendance but persists majority of time;

12         brief and superficial contact with public and co-workers; with proper time and
          instruction, can adapt to highly competitive work environment (internal citation to

13         AR 131-33).
          • *Fredrica Overstreet, M.D.* (*treating* [*medical physician*])*:* unable to communicate

14         due to psychological conditions (internal citation to AR 1004).
          • *Rahul Khurana, M.D.* (*examining* [*medical physician*]): minimal difficulty with

15         simple instructions; moderate impairment with complex instructions and work-related
          judgments; "extreme disability for sustained concentration [and] persistence;"

16         extreme difficulty with typical social interactions with public, supervisors, and co-
          workers and in responding to work routine changes (internal citation to AR 1378-79).

17         • *Alan Breen, Ph.D.* (*examining* [*psychological doctor*]): nursing school curriculum is
          too challenging, medical assistant career may be reasonable; will need a lot of

18         tutoring and mental health treatment to get through academic program (internal
          citation to AR 1499-1500).

19         • *John Horton, M.D. (examining [medical physician]*): no opined work-related
          limitations (internal citation to AR 1504-06).

20         • *David Widlan, Ph.D. (examining [psychological doctor]*): marked impairment in
          adapting to routine work setting changes, communicating effectively in work setting,

21         and completing normal workweek without interruptions from psychologically-based
          symptoms; many additional moderate limitations (internal citation to AR 1007).

22         • *Faulder Colby, Ph.D. (non-examining [psychological doctor]):* same as Dr. Widlan
          (internal citation to AR 1018-20).

23

24   Response 2-3. Although not complete, this summary is accurate. (*See* internal citations).

25

1

      **A.  Consultative Psychiatric Examiner, Dr. Rahul Khurana, M.D.**

2

      Dr. Khurana examined plaintiff on July 23, 2014. *See* AR 1376-80. As noted by plaintiff,

3    Dr. Khurana completed his psychiatric consultative evaluation at the request of defendant. *See*

4    Open, 4. Dr. Khurana took plaintiff's history and subjective reports regarding her symptoms, as

5    well as her reports of her activities of daily living and her limitations. *See* AR 1376-78. For

6    example, he noted her chief complaint was "'I'm here for a DSHS eval.,' [further noting

7    plaintiff] presents for disability evaluation." *See* AR 1376. Dr. Khurana noted the history was

8    "gathered mainly from patient; [however,] extensive records (a combination of psychotherapy

9    notes, PCP notes and [plaintiff's] self-report) were also reviewed." *Id*.

10          Dr. Khurana noted plaintiff's report of "having very bad depression." *Id*. Dr. Khurana

11    also references abuse and domestic violence, and plaintiff's reports of "PTSD symptoms." *See*

12    *id*. Dr. Khurana also performed his own mini mental status exam (MMSE), noting plaintiff

13    "scored 29/30 [and] lost [a] point for recall (but remembered the object when given multiple-

14    choice)." AR 1378. For his assessment, Dr. Khurana diagnosed plaintiff with major depressive

15    disorder, recurrent, severe without psychotic features; post traumatic stress disorder ("PTSD");

16    panic disorder with agoraphobia; generalized anxiety disorder; and a history of alcohol abuse,

17    with borderline personality traits. *See id*.

18          For his clinical summary, Dr. Khurana concluded plaintiff's prognosis was "poor to fair

19    at best." *See id*. For his final plan and recommendations, Dr. Khurana indicated that he believed

20    the "complexity of [plaintiff's] medical and psychiatric illnesses make it unrealistic for [plaintiff]

21    to ever work again in any meaningful capacity." *See* AR 1379. Regarding specific work-related

22    limitations, Dr. Khurana included the following:

23              [Plaintiff] has minimal difficulty with simple instructions. However, work-
          related judgment or carrying out more complex instructions is moderately

24

25

impaired secondary to depression and anxiety disorder (including because of loss of motivation, energy and concentration). [Plaintiff's] understanding is fairly good. However, [plaintiff] has extreme disability for sustained concentration and persistence. [Plaintiff's] illnesses also make typical social interactions (with public, supervisors, or coworkers) in the work environment extremely difficult. [Plaintiff] would also have extreme difficulty responding to changes in the work routine.

*Id.*

The ALJ discussed the opinions from Dr. Khurana in the written decision. *See* AR 1561. The ALJ noted this Court found previously Dr. Khurana's opinion had not been evaluated properly. *See id.*; *see also* AR 1638-43. The ALJ also specifically noted Dr. Khurana (on July 23, 2014) "opined that it is 'unrealistic for [plaintiff] to ever work again in any meaningful capacity.'" *See* AR 1561.

As summarized by plaintiff, plaintiff "to returned to work in late 2017 with the assistance of the State Division of Vocational Rehabilitation as a job coach for people with disabilities at a Northwest Center, a nonprofit organization." Open, 3 (citing AR 1582). As noted by plaintiff, she "initially worked thirteen hours a week spread over three days, [then,][i]n the fourth quarter of 2019 her hours were increased to 20 to 25 hours a week [in which she] worked from one to six hours a day five days a week." *Id*. As acknowledged by plaintiff, plaintiff's "earnings at that point met the requirements for Substantial Gainful Activity." *Id* (citing AR 1792).

In the written decision, at step one of the sequential disability evaluation process, the ALJ discussed plaintiff's earnings with specificity for the particular quarters in 2019 and 2020. *See* AR 1553. The ALJ noted the record did "not indicate that she worked under any special conditions or accommodations, or that [her] impairments limited her productivity or the quality of [her] work." *See id*. The ALJ therefore concluded that "this work activity is substantial gainful activity ['SGA']." *See id*. As the ALJ noted previously in the written decision, if "an individual

1    engages in SGA, she is not disabled regardless of how severe physical or mental impairments are

2    and regardless of her age, education, and work experience." AR 1551. However, if a claimant for

3    disability "is not engaging in SGA, the analysis proceeds to the second step." *See id*.

4           After finding plaintiff "engaged in [SGA] during the following periods: October 2019 to

5    present," *i.e.,* October 28, 2020, the ALJ then found "however, there has been a continuous 12-

6    month period during which [plaintiff] did not engage in [SGA]." AR 1552-53 (citing 20 CFR

7    404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.). The remainder of the ALJ's

8    "findings addressed the period(s) [plaintiff] did not engage in [SGA]." AR 1553.

9           When evaluating the medical opinions of Dr. Khurana, the ALJ noted plaintiff "has since

10   demonstrated the ability to work in a skilled position that involves interacting with others at

11   substantial gainful activity levels, which contradicts Dr. Khurana's conclusions regarding her

12   ability to work," citing Dr. Khurana's opinion "it is 'unrealistic for [plaintiff] to ever work again

13   in any meaningful capacity.'" AR 1561. This finding of a contradiction between Dr. Khurana's

14   conclusions and plaintiff's demonstrated ability to work in the noted position at SGA levels,

15   albeit years later, is based on substantial evidence in the record. *See id*. Dr. Khurana indicated his

16   opinion specifically applied to an infinite amount of years in the future, as he did not find it

17   realistic for her to work again "ever." *See id.* However, not only did she work again, but she

18   worked at a skilled position, at SGA level. *See* AR 1553, 1556. The ALJ's reliance on this

19   contradiction is a specific and legitimate reason for the failure to credit fully Dr. Khurana's

20   opinions of "extreme" impairment of sustained concentration and persistence, social interactions

21   in the workplace and responding to workplace changes. This rationale alone is sufficient.

22          The ALJ's assignment of only little weight to the opinions of Dr. Khurana also had some

23   support from Dr. Khurana's MMSE, in which plaintiff scored 29/30 and completed number 30

24

25

with prompting, as cited by the ALJ, who found such "does not support the extreme limitations assessed" by Dr. Khurana. *See id*. Similarly, as discussed further throughout this Order, *see infra,* the ALJ's finding "the extreme limitations assessed by Dr. Khurana are inconsistent with the record as a whole, which typically documents intact or nearly intact social functioning and concentration and does not show extreme limitations of her ability to adapt," is a finding based on substantial evidence in the record. *See* AR 1561 (citing *e.g.*, Ex. 6F, p. 36, *i.e.*, AR 1056 ((June 17, 2014) "well -appearing," and "very pleasant"); Ex. 11F, p. 24-29 *i.e.*, *e.g.,* AR 1530 ((January 3, 2017) "baseline; pleasant and cooperative; fair insight and judgment; logical and connected thought process"); Ex. 13F, p. 129, 384, *i.e.*, AR 2357 ((May 17, 2017) "breathing comfortably on room air" and "pleasant and cooperative"), AR 2612 ((October 12, 2016) "alert, healthy appearance, [no acute distress], pleasant and cooperative," and alert and oriented "A & O"); Ex. 12F, p. 300 *i.e.*, (Dkt. 9) AR 2125 ((March 30, 2016) "[plaintiff] presents with continued anxiety and PTSD symptoms and difficulty regulating her anxiety," but "Mental Status Examination  …. Behavior/Activity: calm and cooperative; Speech: clear, coherent, fluent; [in context of:] Affect: anxious and depressed; Mood: anxious and depressed; Thought form: normal, logical, coherent, goal directed; Thought content: normal; Attention/concentration: alert; Memory: no apparent deficit; Insight/judgment: good insight and judgment"), Ex. 21F, p. 7, 12, 21, *i.e.*, (Dkt. 10) AR 4134 ((September 21, 2017) " wake, alert, and oriented x 4 [who they are, where they are, when it is, why they are there] no apparent distress. Pleasant, cooperative. Psychological: mood is euthymic [within normal limits], affect is normal", AR 4139 ((May 6, 2020) "in no apparent distress, [nothing else of note], NEUROLOGIC EXAM: higher cortical function; oriented to place, time, person; recent and remote memory (e.g. personal history) intact; attention span and concentration intact; language (spontaneous speech, naming

objects) intact; fund of knowledge (current events, past history, vocabulary) intact"), AR 4148 ((June 23, 2020) "await, alert and oriented x4. No apparent distress. Pleasant and cooperative; psychologic: mood is euthymic [within normal limits], affect is normal").

For the reasons stated and based on the record as a whole, the Court concludes the ALJ did not err when evaluating the medical opinion of Dr. Khurana.

**B.  Examining Psychologist, Dr. David Widlan PhD**

Dr. Widlan examined and evaluated plaintiff on May 28, 2015. *See* AR 1005-16. Dr. Widlan took a brief history and noted plaintiff's description of activities of daily living included attending school three days a week and using the bus; however plaintiff reported struggling in her first quarter at school. *See* AR 1005-06. Dr. Widlan noted plaintiff's symptoms of depression and anxiety, including her reported nightmares, vigilance, startle and agitation, all severe, as well as her lack of energy/motivation, irritability and general dysphoria, which were reported as marked severity. *See* AR 1006. Dr. Widlan performed a mental status examination, in which plaintiff's speech, appearance, and psychomotor behavior all were within normal limits, and she was cooperative. *See* AR 1008. However, plaintiff's depression was marked, based on plaintiff's self-reported testing, but her anxiety was moderate: she presented with a restricted affect. *See id*.; *see also* 1014-16.  Dr. Widlan assessed plaintiff's thought process and content; orientation; perception; memory; fund of knowledge; concentration; abstract thought; and, insight and judgment all were within normal limits. *See* AR 1008-09.

Dr. Widlan diagnosed plaintiff with post traumatic stress disorder, as well as major depressive disorder, recurrent, moderate to severe without psychotic features, in addition to physical diagnoses. *See id*. Regarding specific functional limitations, Dr. Widlan opined plaintiff suffered from marked limitations in her ability to adapt to changes in a routine work setting;

1  communicate and perform effectively in a work setting (a "social" limitation); and complete a

2  normal workday and workweek without interruptions from psychologically based symptoms, in

3  addition to a large number of moderate limitations. *See* AR 1007.

### 1. Regular school attendance and use of public transportation

5  The ALJ discussed the opinions of Dr. Widlan in the written decision and gave them little

6  weight. *See* AR 1562.  The ALJ found "Dr. Widlan's examination findings do not support the

7  marked limitations he assessed," noting the many normal observations just cited above, *see*

8  *supra*. AR 1562. Importantly, the ALJ also noted at plaintiff's evaluation, plaintiff told Dr.

9  Widlan about her regular school attendance and use of public transportation, as well as attending

10  to her daily needs. *Id*. The ALJ concluded these noted findings "are inconsistent [with] marked

11  social limitations, marked limitation of her ability to adapt, or marked difficulty completing a

12  normal workday or workweek," as opined by Dr. Widlan. *See id*. These findings are based on

13  substantial evidence and entail specific and legitimate rationale for failing to credit fully the

14  medical opinions of limitations by Dr. Widlan.

15  The Court also notes throughout the ALJ's decision, as alluded to previously, *see supra*,

16  Section I A, the ALJ noted plaintiff's activities inconsistent with marked social limitations, as

17  well as noting the plethora of notes throughout the treatment record of plaintiff's normal mood

18  and affect, and pleasant and cooperative behavior, also inconsistent with marked social

19  limitations. For example, the ALJ earlier in the decision noted plaintiff "attended college classes

20  and reported earning good grades in 2012 and 2013." AR 1555 (citing Ex. 2F, p. 9, *i.e.,* AR 409

21  (January 5, 2012: "[plaintiff] is proud of getting good grades last quarter and has started Spring

22  Quarter classes"); Ex. 6F, p. 310, 338, *i.e.,* AR 1330 (April 3, 2013: "[plaintiff] is happy with

23  studies and has a class at 8:00 AM and one at 10:00 AM []. [Plaintiff] feels affirmed by how well

24

25

she did last quarter, only missing 2 days in spite of all she is going through last year"), AR 1358
(February 14, 2013: "[plaintiff] returns today stating that is doing better. School is going better
and [plaintiff] is getting Bs in courses [;] has only missed one day this quarter"); *but see* AR
1358 (February 27, 2013: Plaintiff "feels like [frequent nightmares are] interfering with school,
feels disconnected in class and grades are slipping from A/B to C"). Although plaintiff faults the
ALJ for pointing to plaintiff's attendance in 2012 and 2013, calling it inexplicable, (Open, 12),
plaintiff herself acknowledges she filed her applications for Disability Insurance Benefits and
"Supplemental Security Income, alleging disability beginning December 31, 2009." Open, 2
(citing AR 258, 260). As noted by defendant, "at the hearing, plaintiff asked the ALJ to either
find that there was a period of disability with the trial work period and suggested that '[i]n the
alternative … another possibility would be to find her eligible for the closed period of
eligibility[;] that is, plaintiff did not officially amend her application to ask only for a closed
period." Response 9 (internal citation to AR 1578). The Court agrees with defendant "the ALJ
did not err in considering the relevance of Dr. Widlan's opinion across the entire relevant
period." *Id*.

Although plaintiff stated her grades deteriorated subsequently, the ALJ's finding
plaintiff's reported contemporaneous school attendance, with use of public transportation, is
inconsistent with Dr. Widlan's opinions of marked social limitation in communications and
performance at work is based on substantial evidence and provides specific and legitimate
rationale for failing to credit fully Dr. Widlan's opinions. As noted by the ALJ, plaintiff reported
these activities to Dr. Widlan at the time of his evaluation. *See* AR 1562 (citing AR 1006).
Although plaintiff is correct that her noted activities were not taking place in a work setting, the
ability to use public transportation in order to attend school multiple times a week on a specified

1    (class) schedule not of her choosing "is such relevant evidence as a reasonable mind might

2    accept as adequate to support" the finding by the ALJ of an inconsistency with Dr. Widlan's

3    opinion of marked social limitation. *See Biestek, supra,* 139 S. Ct. at 1154 (internal citations

4    omitted) (Substantial evidence is "'such relevant evidence as a reasonable mind might accept as

5    adequate to support a conclusion'").

6    **2. Intact or nearly intact social functioning and concentration in the record**

7    In addition, in the previous section, *see supra* Section I A, the Court already has noted the

8    plethora of citations the ALJ provided when finding an inconsistency between "the extreme

9    limitations assessed by Dr. Khurana [] [] with the record as a whole, which typically documents

10   intact or nearly intact social functioning and concentration …." *See* AR 1561 (citing *e.g.*, Ex. 6F,

11   p. 36, *i.e.*, AR 1056 ((June 17, 2014) "well -appearing," and "very pleasant"); Ex. 11F, p. 24-29

12   *i.e., e.g.,* AR 1530 ((January 3, 2017) "baseline; pleasant and cooperative; fair insight and

13   judgment; logical and connected thought process"); Ex. 13F, p. 129, 384, *i.e.*, AR 2357 ((May

14   17, 2017) "breathing comfortably on room air" and "pleasant and cooperative"), AR 2612

15   ((October 12, 2016) "alert, healthy appearance, [no acute distress], pleasant and cooperative,"

16   and alert and oriented "A & O"); Ex. 12F, p. 300 *i.e.*, (Dkt. 9) AR 2125 ((March 30, 2016)

17   "[plaintiff] presents with continued anxiety and PTSD symptoms and difficulty regulating her

18   anxiety," but "Mental Status Examination  ….  Behavior/Activity: calm and cooperative; Speech:

19   clear, coherent, fluent; [in context of:] Affect: anxious and depressed; Mood: anxious and

20   depressed; Thought form: normal, logical, coherent, goal directed; Thought content: normal;

21   Attention/concentration: alert; Memory: no apparent deficit; Insight/judgment: good insight and

22   judgment"), Ex. 21F, p. 7, 12, 21, *i.e.*, (Dkt. 10) AR 4134 ((September 21, 2017) " wake, alert,

23   and oriented x 4 [who they are, where they are, when it is, why they are there] no apparent

24

25

distance. Pleasant, cooperative. Psychological: mood is euthymic [within normal limits], affect is normal", AR 4139 ((May 6, 2020) "in no apparent distress, [nothing else of note], NEUROLOGIC EXAM: higher cortical function; oriented to place, time, person; recent and remote memory (e.g. personal history) intact; attention span and concentration intact; language (spontaneous speech, naming objects) intact; fund of knowledge (current events, past history, vocabulary) intact"), AR 4148 ((June 23, 2020) "await, alert and oriented x4. No apparent distress. Pleasant and cooperative; psychologic: mood is euthymic [within normal limits], affect is normal").

It is true this citation list was not provided in the paragraph of the written decision discussing the medical opinion of Dr. Widlan, and instead is within the paragraph assessing Dr. Khurana's medical opinion. *See* AR 1561-62. However, in the context of this record, and these particular findings by the ALJ regarding these particular doctors' opinions, it is clear from the ALJ's written decision as a whole, including the detailed and thorough discussion of the medical evidence, that this aspect of the record supports the ALJ's providing only little weight to the opinions of DSHS consultant Dr. Widlan, as well as the ALJ's finding of a contradiction between plaintiff's social abilities and Dr. Widlan's opinions of functional limitations in this regard. *See id.* "Magic words" on the part of an ALJ are not required, and this reviewing Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). As noted previously, and as noted in plaintiff's brief, an ALJ provides specific and legitimate reasons for failing to credit fully a contradicted medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, *supra,* 157 F.3d at 725 (citing *Magallanes*, *supra*, 881 F.2d at 751). The ALJ did that.

1          **3.   Subsequent work at SGA**

2          Finally, the ALJ noted plaintiff "has subsequently demonstrated the ability to work at

3    [SGA], indicating that her conditions are not as limiting as assessed by Dr. Widlan." AR 1562.

4    This finding, too, is based on substantial evidence. The ALJ's conclusion that overall, "Dr.

5    Widlan's opinions are not well-supported and are inconsistent with [plaintiff's] demonstrated

6    abilities" is a finding based on substantial evidence in the record.

7          For the reasons stated and based on the record as a whole, the Court concludes the ALJ's

8    findings related to the opinions of Dr. Widlan are based on substantial evidence, and further

9    concludes they entail specific and legitimate rationale for the failure to credit fully and give only

10   little weight to Dr. Widlan's medical opinions.

11   C.   **Non-Examining Psychologist, Dr. Faulder Colby, PhD**

12         Dr. Colby did not examine plaintiff, but as noted by plaintiff "was contracted by the

13   Washington State DSHS in June 2014 to review Dr. Widlan's opinion and the medical evidence

14   on which it was based." Open 13 (citing AR 1017-20). As noted by plaintiff, "Dr. Colby agreed

15   with Dr. Widlan that the results of his evaluation indicated the plaintiff was markedly limited in

16   her ability to adapt to changes in a routine work setting, communicate and perform effectively in

17   a work setting and complete a normal workday and workweek without interruptions from

18   psychologically-based symptoms." *Id* (citing AR 1018). Plaintiff is correct that the ALJ provided

19   no other explanation other than Dr. Colby "based's opinions entirely on Dr. Widlan's report, and

20   his assessment mirrors Dr. Widlan's conclusions [;] [t]herefor, Dr. Colby's opinions are not

21   persuasive for the same reasons as Dr. Widlan's - they are not well supported and are

22   inconsistent with the claimant's abilities." AR 1562.

23

24

25

This Court already has discussed the ALJ's rejection of the medical opinion from Dr. Widlan and found the provision of only little weight to Dr. Widlan's opinions to be based on specific and legitimate rationale supported by substantial evidence, *see supra*, Section I B. Plaintiff argues "if Dr. Widlan's opinion was indeed not supported by his examination, it was Dr. Colby's job to uses medical training to identify such an error [and] that Dr. Colby's opinion confirms Dr. Widlan's further demonstrates the failure of the ALJ' argument against Dr. Widlan." Open 14. However, the Court agrees with defendant, based on this record, and these particular opinions, "these opinions [of Dr. Widlan and Dr. Colby] should rise or fall together." Response 9.

Based on the rationale applied to the ALJ's provision of only little weight to the medical opinions of Dr. Widlan, and based on this Court's review of the medical evidence and the record as a whole, the Court concludes the ALJ provided specific and legitimate rationale based on substantial evidence in the record for the failure to credit fully the opinions of Dr. Colby, non-examining psychologist.

**D.  Treating Physician, Dr. Frederica Overstreet, M.D.**

Plaintiff notes on May 29, 2014 Dr. Overstreet, plaintiff's primary care provider completed a physical assessment at the request of Washington State DSHS. Open 14. As noted by plaintiff, Dr. Overstreet opined plaintiff suffered from the diagnoses of depression, PTSD, bilateral hand pain, anxiety and asthma; and, plaintiff would be unable to perform even sedentary work. *See* Open (citing AR 1001, 1004). Plaintiff contends the ALJ erred when assigning little weight to Dr. Overstreet's medical opinion. Defendant contends the ALJ "considered and gave little weight to Dr. Overstreet's opined limitations for a specific and legitimate reason." Response 9-11 (citing AR 1560-61).

Defendant notes regarding "psychiatric limitations, Dr. Overstreet opined plaintiff has moderate to severe limitation in her ability to communicate due to depression, post traumatic stress disorder, and anxiety." Response (citing AR 1004). Further noting "severe is defined as the inability to perform an activity, [defendant argues] so, Dr. Overstreet opined plaintiff is unable to communicate." *Id* (internal citation to AR 1004 omitted). As the record reflects Dr. Overstreet opined plaintiff's anxiety severely affected the ability to communicate at work, with severe being defined as the inability to perform that basic work activity, the Court finds defendant's summary of that aspect of the record to be accurate. *See* AR 1004.

Regarding physical limitations, defendant notes Dr. Overstreet "opined plaintiff has marked restriction in ability to lift, carry, handle, push, and pull due to bilateral hand pain and cannot perform even sedentary work." Response (citing AR 1001, 1004). Defendant contends the ALJ's rationale for providing only little weight to Dr. Overstreet's opinions is specific and legitimate and based on substantial evidence. For the reasons discussed below, the Court agrees.

Although plaintiff is correct Dr. Overstreet was plaintiff's treating physician and her treatment records are part of the record, substantial evidence supports the ALJ's finding in the written decision that on the form containing specific work-related limitations, "Dr. Overstreet did not provide a basis for [her] opinion [of severe limitation]. " AR 1560 (citing AR 1000-1004).

The ALJ noted additionally in the written decision: "Dr. Overstreet cited [plaintiff's] hand pain and neuropathy, asthma, and mental health conditions, but did not explain how these diagnoses correlate to the extreme limitations she assessed." AR 1560. The ALJ found Dr. Overstreet's specific work-related limitations opinion "does not include any examination observation or other objective findings to support an inability to perform sedentary work." AR 1560-61. The ALJ concluded: "Overall, this assessment is brief, conclusory, and inadequately

1    supported, and the undersigned gives it little weight." AR 1561. In the context of this record, the

2    Court concludes the ALJ offered specific and legitimate findings based on substantial evidence.

3            Plaintiff argues: "with regard to the Plaintiff's depression, PTSD and anxiety, [Dr.

4    Overstreet] wrote [plaintiff was] 'in therapy and on anti—depressants[;]' for her hand pain Dr.

5    Overstreet wrote 'hand specialists, rheumatologists, injections.'" Open 14-15 (quoting AR 1000).

6    However, like Dr. Overstreet, plaintiff does not explain how being in therapy, on antidepressants,

7    visiting specialists and rheumatologists and receiving injections explains how plaintiff was

8    limited to only sedentary work. *See id*. Although plaintiff argues this information from the

9    treatment record "contradicts the ALJ's assumptions," instead, the Court finds persuasive

10   defendant's argument substantial evidence supports the ALJ's finding in the written decision Dr.

11   Overstreet's specific work-related limitations opinion "does not include any examination

12   observation or other objective findings to support an inability to perform sedentary work." AR

13   1560-61.

14           Plaintiff's direction to the record documenting she was visiting specialists, reporting

15   bilateral hand pain, in therapy and receiving antidepressants and injections does not deprive the

16   ALJ's finding of substantial evidence Dr. Overstreet's "assessment is brief, conclusory, and

17   inadequately supported." AR 1561. Although there may not be a requirement that an opinion

18   contain supporting basis within it, the lack of sufficient supporting bases within a form or

19   anywhere in the treatment record is an appropriate basis and a specific and legitimate rationale

20   based on substantial evidence for an ALJ's failure to credit fully a medical opinion. *See*

21   Response 10 (citing *Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("the ALJ need not

22   accept the opinion of any physician, including a treating physician, if that opinion is brief,

23   conclusory, and inadequately supported by clinical findings" (other citations omitted)).

24

25

1    Similarly, although plaintiff cites to isolated instances in the record showing clinical findings of

2    inflammatory markers and positive Phalen's and Tinel's tests, as well as EMG studies consistent

3    with carpal tunnel syndrome, (Open 16 (citing AR 1056-57)), defendant persuasively argues

4    plaintiff simply is "requesting an alternative interpretation of the evidence," as the treatment note

5    cited "indicates plaintiff presented as pleasant and well-appearing with only mild findings in the

6    bilateral wrists, full strength, no muscle atrophy, and intact neurological findings.'" Response

7    10-11 (citing AR 1056-57); *see e.g.*, AR 1056 ("the hands, wrists, elbows, shoulders, hips, knees,

8    ankles and feet were evaluated today [and] no evidence of synovitis in any joints [and] she has

9    mildly decreased bilateral wrist flexion about 5 to 10° due to discomfort with full [range of

10    motion]. The rest of her joints have normal range of motion … [Although tender] she has 5/5

11    strength in all major muscle groups. No evidence of muscle atrophy. No evidence of

12    contractures. Positive Phalens bilaterally, + Tinels on the right only"). *See also Thomas v.

13    Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (It is not the job of the court to reweigh the

14    evidence: If the evidence "is susceptible to more than one rational interpretation," including one

15    that supports the decision of the Commissioner, the Commissioner's conclusion "must be

16    upheld") (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601 (9th Cir. 1999)).

17          For the reasons stated and based on the record as a whole, the Court concludes the ALJ's

18    provision of little weight to the medical opinion of Dr. Overstreet is based on specific and

19    legitimate rationale supported by substantial evidence.

20          **II.      The ALJ did not err when evaluating plaintiff's RFC.**

21          Plaintiff contends that the ALJ erred by failing to determine an RFC supported by

22    substantial evidence as limitations beyond those adopted by the ALJ are indicated in the record

23    that if adopted, would preclude maintenance of substantial gainful activity. Plaintiff contends the

24

25

1   ALJ's adopted RFC inappropriately relies on the opinions of defendant Agency's own medical

2   consultants as opposed to medical opinions from plaintiff's treating, examining, or other

3   consulting doctors. *See* Open 16-18. Defendant contends plaintiff again simply is requesting an

4   alternative interpretation of the evidence "and fails to identify any harmful error." Response 11

5   (citing Open 16-18). For the reasons discussed herein, the Court finds defendant's arguments

6   persuasive.

7        If the ALJ cannot determine whether a claimant is disabled based on a claimant's current

8   work activity or on medical factors alone and a claimant has a severe impairment, a review is

9   made of the claimant's residual functional capacity ("RFC"). *See* Social Security Ruling "SSR"

10  96-8p, 1996 SSR LEXIS 5 at *3-*4, 1996 WL 374184. As noted by the Ninth Circuit, "Social

11  Security Regulations define [RFC] as the 'maximum degree to which the individual retains the

12  capacity for *sustained* performance of the physical-mental requirements of jobs." *Reddick v.*

13  *Chater*, 157 F.3d 715, 724 (9th Cir. 1998)) (quoting 20 C.F.R. § 404, Subpart P, App. 2 §

14  200.00(c)) (emphasis added by Ninth Circuit); *see also* SSR 96-8p, 1996 SSR LEXIS 5 at *5.

15  [RFC] is the most a claimant can do despite existing limitations. *See* 20 C.F.R. §§ 404.1545(a),

16  416.945(a); *see also* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).

17       In the written decision, the ALJ found as follows regarding plaintiff's RFC:

18       [Plaintiff] has the RFC to perform light work with some additional limitations.
         [Plaintiff] can occasionally climb ladders, ropes, or scaffolds and can
19       occasionally crawl. She can frequently push or pull hand controls, handle, and
         finger. [Plaintiff] must avoid concentrated exposure to respiratory irritants and
20       hazards. [Plaintiff] can perform simple, routine tasks and familiar learned
         detailed tasks. She can interact superficially with the general public and small
21       groups of co-workers.

22  AR 1556-57 (internal citation to 20 CFR 404.1567(b) and 416.967(b)).

23

24

25

1            Plaintiff argues the ALJ's RFC incorrectly fails to include limitations, and notes the

2    "erroneous dismiss[al] [of] the opinions of treating physician Dr. Overstreet, consultative

3    examiner Dr. Khurana, examining psychologist Dr. Widlan and Dr. Colby." Open 17. However,

4    the Court already has found these arguments to be unpersuasive, and has upheld the ALJ's

5    failure to credit fully the opinions from these doctors, *see supra,* Section I.  Plaintiff next argues

6    "[o]ther evidence in the record supports a finding that the plaintiff suffered more serious social

7    and health limitations than concluded by the ALJ [, noting] [t]wo mental health evaluations were

8    performed as a part of the plaintiff's involvement with the Division of Vocational Rehabilitation,

9    and her efforts to return to school and work." *Id*. Plaintiff notes in mid-2016, Dr. Alan Breen,

10   PhD, clinical psychologist, evaluated plaintiff, made various diagnoses, and recommended

11   against plaintiffs "proposal that she attend nursing school, opining that it would be too stressful

12   and ' … create further mental health problems.'" *Id*. (quoting AR 1500). Plaintiff acknowledges

13   Dr. Breen "observed that the cognitive testing did not reveal  'dramatic neurocognitive

14   difficulties,'" but highlights Dr. Breen's opinion "[f]ar more significant are the emotional

15   problems which are profound and dense." *Id*. (quoting AR 1499). Plaintiff points out Dr. Breen

16   characterized plaintiff's mood difficulties as "very significant," despite medication leaving her in

17   need of "a lot of help." *Id*. Although these may be an accurate reflection of the record, defendant

18   persuasively argues plaintiff has not identified any harmful error. *See* Response 11-12. The Court

19   notes the ALJ provided "some weight" to the opinions of consultative examiner Dr. Breen. *See*

20   AR 1561.

21           Plaintiff also notes the assessment on September 7, 2016 from psychiatrist Dr. John

22   Horton at the request of Division of Vocational Rehabilitation. Open 17 (citing AR 1501).

23   Diagnosing plaintiff with PTSD, major depression, panic disorder, social anxiety disorder and

24

25

ORDER - 20

1   alcohol use disorder, Dr. Horton noted plaintiff remained symptomatic with her depression,

2   anxiety and PTSD despite medication treatment. *See id* (citing AR 1505). Importantly, plaintiff

3   acknowledges that "neither Dr. Breen nor Dr. Horton offered or were asked to offer assessment

4   of work limitations for the performance of SGA[; but argues] their findings are entirely

5   consistent with those of Dr. Khurana and Dr. Widlan and do not suggest that the plaintiff was

6   capable of full-time gainful work activity at the time of their assessments." *Id*. at 18. Plaintiff

7   argues the ALJ "clearly marshaled selective evidence in order to support his conclusions," and

8   would have had to include more significant unspecified limitations in formulating his RFC. *Id*.

9        Defendant argues the ALJ "noted the assessments were consistent with his own decision,

10  as well as plaintiff's return to work[; and,] indeed, Dr. Breen actually opined that her previous

11  work as a medical assistant would be more appropriate than a nursing degree." Response 12

12  (citing AR 1499-1500, 1561). Defendant argues the Court should decline plaintiff's request to

13  reweigh the record as regardless of whether the noted opinions are consistent with other

14  opinions, the "ALJ's analysis is proper, and plaintiff establishes no error, let alone a harmful

15  one." *Id*.

16       Based on the record as a whole, the Court finds defendant's argument to be persuasive.

17  *See id*. As noted by defendant, Dr. Breen suggested plaintiff's return to work as a medical

18  assistant would be reasonable, even though he opined it "is not clear from this assessment that

19  [plaintiff] has the coping skills, stress management capabilities, or personal stability to handle

20  the challenges of the nursing school prerequisites and then nursing school." Response 12; *see*

21  *also* AR 1499. Furthermore, as noted by defendant, plaintiff has not identified any specific work

22  related opinions not are not included within the RFC that should be based on these opinions, but

23

24

25

ORDER - 21

instead appears to argue that this evidence supports the adoption of the work-related limitations

opined by Drs. Khurana and Widlan.

However, the Court already has reviewed this medical evidence provided by Drs.

Khurana and Widlan and upheld the ALJ's failure to adopt it in full, *see supra,* Section I.

Furthermore, it is not the job of the court to reweigh the evidence. At best, plaintiff is offering an

alternative interpretation of the evidence, potentially also supported by substantial evidence.

However, if the evidence "is susceptible to more than one rational interpretation," including one

that supports the decision of the Commissioner, the Commissioner's conclusion "must be

upheld." *Thomas*, *supra*, 278 F.3d at 954 (citing *Morgan*, *supra*, 169 F.3d at 599, 601).

<u>CONCLUSION</u>

The ALJ provided a thorough and detailed discussion of the long medical record in this

matter.  The ALJ provided specific and legitimate rationale supported by substantial evidence for

the medical opinions that were not adopted, including work-related limitations opined that were

not included into the residual functional capacity.

Based on the foregoing discussion, the Court concludes the ALJ properly determined

plaintiff to be not disabled. Therefore, the ALJ's decision is affirmed.

Dated this 27th day of January, 2022.

David W. Christel
United States Magistrate Judge

ORDER - 22